Gregory D. Phillips (4645)
Jared L. Cherry (11534)
PCFB LAW
4001 S. 700 E., Suite 500
Salt Lake City, UT 84107
Tel:(801)935-4933
gdp@pcfblaw.com
jared@pcfblaw.com

Wei (David) Gu, Esq. (*Pro Hac Vice Forthcoming*)
TronFuture Law PLLC
305 Broadway, Suite 700,
New York, NY 10007
Tel: (212) 897-5842
davidgu@tronfuturelaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Zhongchengguoda (Shenzhen) Qiyefazhanyouxiangongsi, a Chinese Limited Liability Company,<br><br>    Plaintiff,<br><br>  v.<br><br>RVLock & Co, LLC, a Utah Limited Liability Company,<br><br>    Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No: _____<br><br><br>District Judge _____ |

**COMPLAINT**

1.      Plaintiff Zhongchengguoda (Shenzhen) Qiyefazhanyouxiangongsi ("Plaintiff") brings this action against Defendant RVLock & Co., LLC ("RVLock"), and in support thereof alleges the following:

**NATURE OF THE ACTION**

2.      This action arises under the patent laws of the United States of America, 35

1

U.S.C. § 1 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1367, in response to assertions made in RVLock's baseless Amazon complaints that certain RV door lock products imported, marketed, and sold in the United States by Plaintiff ("the Accused Locks") infringe its patent. RVLock's improper Amazon complaints have harmed Plaintiffs' ability to sell the Accused Locks and are further injuring Plaintiffs and their products' reputations in the marketplace. Accordingly, RVLock's assertion of patent infringement gives rise to a substantial and justiciable controversy between the parties that Plaintiffs seek to resolve through this action. Plaintiffs also seek to recover damages against RVLock for its baseless and improper complaints to Amazon that have injured Plaintiffs.

## THE PARTIES

3. Plaintiff markets and sells recreational vehicle ("RV") door lock products on the Amazon.com platform.

4. Plaintiff Zhongchengguoda (Shenzhen) Qiyefazhanyouxiangongsi is a company organized and existing under the laws of the People's Republic of China with its principal place of business located in the People's Republic of China.

5. Defendant RVLock is a Utah limited liability company with a listed address for service of process at 1700 West 2690 South, Wellsville, Utah 84339. This is also the address displayed on the RVLock website's page footer.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the laws of the United States, in particular the Patent Act of the United States, 35 U.S.C. § 1 et seq., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court also has subject matter jurisdiction under 28 U.S.C. § 1367 to hear

related state-law claims that arise from this same case or controversy.

7. This Court has personal jurisdiction over RVLock. RVLock is registered to do business in the State of Utah (Entity Number: 9262395-0160), has its headquarters in the State of Utah, and has offices in this District. RVLock, directly and through agents, regularly does, solicits, and transacts business in this District and elsewhere in the State of Utah.

8. Venue is proper in this District under 28 U.S.C. Section 1391. RVLock has a regular and established place of business in this District. More specifically, RVLock has offices and employees located at 1700 West 2690 South, Wellsville, Utah 84339. RVLock also lists this address on its website (https://www.rvlock.com/pages/about-us).

9. An immediate, real, and justiciable controversy exists between Plaintiffs and RVLock as to whether Plaintiff is infringing or has infringed the '919 Patent, as well as to whether RVLock's baseless and improper complaints to Amazon tortiously interfered with Plaintiffs' business relationships related to the Amazon marketplace.

**RVLOCK PURCHASED PATENTS AFTER IT COULD NOT OBTAIN ITS OWN**

10. Almost twenty years ago, RVLock applied for a patent on a "Recreational Vehicle Wireless Keyless Power Door Lock," and this application was published as U.S. Patent Application Publication No. 2008/0258867, a copy of which is attached as Exhibit A.

11. RVLock's patent application was rejected multiple times by the United States Patent and Trademark Office, and RVLock eventually abandoned its application.

12. In 2023, RVLock purchased patents from Bauer Products Inc., a manufacturer of products for the recreational vehicle industry.

13. One of these patents, entitled "Touch Pad Lock Assembly" with application number 13/424,512, was filed on March 20, 2012, and ultimately issued as U.S. Patent No.

3

9,085,919 (the '919 Patent) on July 21, 2015. A true and correct copy of the '919 Patent is attached as Exhibit B.

14. Another related patent, also entitled "Touch Pad Lock Assembly" with application number 14/740,640, was filed on June 16, 2015, and ultimately issued as U.S. Patent No. 9,940,767 (the '767 Patent) on April 10, 2018. A true and correct copy of the '767 Patent is attached as Exhibit C.

### RVLOCK'S MISUSE AND ABUSE OF AMAZON'S PROCEDURES

15. Under the Amazon Patent Evaluation Express (APEX) program, patent owners may report products, identified by their Amazon Standard Identification Number (ASIN), and request that a neutral evaluator review the owner's allegations of infringement. If the neutral evaluator concludes that a patent covers an Accused Product, the products for the reported ASINs are removed from the Amazon store. Importantly, Amazon's standard APEX procedure allows sellers to opt in to the evaluation and defend their products.

16. On December 24, 2025, Amazon removed Plaintiffs' ASINs in response to patent infringement allegations by RVLock. Amazon did *not* allow Plaintiff the option of responding to or defending itself against RVLock's allegations. Plaintiffs were never allowed to submit their defenses to a neutral evaluator as part of the APEX program before the de-listing of the Accused Locks.

17. Upon information and belief, RVLock engaged in a deliberate and systematic pattern of conduct, willfully misusing the APEX process to prevent lawful competition. Specifically, RVLock improperly leveraged the outcome of unrelated APEX proceedings to assert infringement complaints against other separate and distinct products—including the Accused Lock at issue in this case—which were neither evaluated by any neutral evaluator nor

4

implicated in any prior APEX determinations.

18. RVLock knew that a direct challenge to the Accused Locks in a standard APEX proceeding was unlikely to be successful because the Accused Locks do not infringe.

19. Thus, to circumvent a direct challenge to the Accused Locks, RVLock misled or misrepresented to Amazon that the Accused Locks were similar to a separate, unrelated product for which RVLock had already obtained a favorable APEX decision.

20. Upon information and belief, Amazon relied on RVLock's assertions of similarity in removing the Accused Locks from Amazon without allowing Plaintiffs to submit their defenses to a neutral evaluator as part of the APEX program before the de-listing.

21. RVLock knew its assertion of patent infringement against the Accused Locks was objectively baseless, and also knew that bypassing Amazon's standard APEX procedures would prevent a neutral evaluator from examining the baselessness of RVLock's assertions.

22. By circumventing Amazon's standard APEX procedure and asserting baseless complaints, RVLock misused and abused the APEX process and Amazon's procedures for resolving patent infringement disputes.

**PLAINTIFFS' ACCUSED LOCKS THAT WERE IMPROPERLY DELISTED**

23. Plaintiff sells the Accused Locks on Amazon and has earned a significant reputation and customer recognition. The Accused Locks listings at issue are identified by ASIN No. B0DZWQ4KM5. An exemplary image of the Accused Locks is shown in Illustration 1 below:

| Illustration 1 |
|---|
|  |

## RVLOCK'S BASELESS AND IMPROPER ASSERTIONS OF INFRINGEMENT

24. A comparison and analysis of the patent claims with the internal mechanism of the Accused Locks demonstrates the baselessness and improper nature of RVLock's allegations of patent infringement.

25. The '919 and the '767 Patents disclose and claim a lock assembly that employs a cam-and-linkage mechanism to actuate a deadbolt. By contrast, Plaintiff's product utilizes a fundamentally different dual-gear drive configuration to move the deadbolt, without employing the linkage elements as claimed by RVLock's patents. This significant structural and functional distinction renders RVLock's infringement allegations objectively baseless.

26. The stark differences between the cam-and-linkage mechanism disclosed in

RVLock's Patents (shown in Illustration 2) and the dual-gear drive configuration used in the Accused Locks (shown in Illustration 3) are apparent from a simple inspection of the respective mechanisms.



Illustration 2

27. RVLock's patents neither disclose nor claim lock assemblies that use gears disposed between a motor, a key cylinder, and a deadbolt.

| Illustration 3 |
|---|
|  |

28. As shown in Illustration 3, above, the Accused Locks do *not* include the linkage elements required by the claims in RVLock's patents.

29. The differences between the linkage mechanism claimed by RVLock's patents and the dual-gear drive configuration used in the Accused Locks are such that RVLock could not have reasonably expected success in asserting patent infringement.

30. RVLock circumvented the intended purpose of the APEX process by short-circuiting any neutral evaluation and usurping an improper commercial advantage by removing its competitors' products from Amazon. In doing so, RVLock has sought to deprive Plaintiff of an avenue to defend against RVLock's allegations of infringement.

31. RVLock's conduct has significantly harmed Plaintiffs. The improper removal eliminated

the primary marketplace in which Plaintiffs sell the Accused Locks. In addition to the direct detrimental impact in loss of sales, the delisting of the Accused Locks also immediately resulted in a loss of market share, product reviews, and product ratings, which are all crucial metrics in ranking Plaintiffs' performance on the Amazon platform and affect Plaintiffs' reputation and goodwill in the marketplace.

**FIRST CAUSE OF ACTION**
**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF**
**US. PATENT NOS. 9,085,919 AND 9,940,767)**

32. Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1-30 above as if fully set forth herein.

33. RVLock claims to own rights, title, and interest in and under the '919 Patent and the '767 Patent.

34. Plaintiffs do not directly or indirectly infringe the '919 Patent, either literally or under the doctrine of equivalents. Independent claim 1 of the '919 Patent is reproduced below, as representative:

> 1. A lock assembly adapted for mounting adjacent an associated closure of the type that can be shifted between an open position and a closed position, the lock assembly, comprising:
>
> (a) a housing;
>
> (b) an external handle pivotally mounted in an exterior portion of the housing for rotation between a retracted position and an extended position;
>
> (c) a latch operably connected with the external handle and configured such that when the external handle is in the retracted position, the latch is in a latched position, wherein the closure cannot be unintentionally shifted from the closed position, and when the external handle is in the extended position, the latch is in an unlatched position, wherein the closure is free to be shifted from the closed position to the open position;
>
> (d) a key lock mounted on the exterior portion of the housing, where the key lock has a locked and an unlocked position;
>
> (e) a lock cam rotatably mounted in the housing and operably connected with the key lock for rotation therewith, the lock cam having a lock cam crank arm;

(f) a first link operably connected with the lock cam crank arm;

(g) a deadbolt lock movably mounted in the housing for shifting between a locked position, wherein the closure is positively retained in the closed position, and an unlocked position, wherein the closure is free to be shifted between the open and closed positions;

(h) the deadbolt lock being operably connected with the first link;

(i) a motor having a locked and unlocked position operatively connected with the first link; and

(j) an electronic touchpad mounted on the exterior portion of the housing being operatively connected with the motor, whereby entry of a preselected numerical code actuates the motor and contemporaneously shifts the deadbolt lock between the locked and unlocked positions.

35. Plaintiffs do not directly or indirectly infringe the '767 Patent, either literally or under the doctrine of equivalents. Independent claim 14 of the '767 Patent is reproduced below, as representative:

14. A lock assembly adapted for mounting on an associated closure and the like of the type that can be moved between an open position and a closed position and an opening in the closure extending between an exterior and an interior surface of the closure, the lock assembly comprising:

(a) a housing having an exterior plate juxtaposed against the exterior surface of the closure and an interior plate juxtaposed against the interior surface of the closure, the exterior and interior plates attached one to the other between the exterior and interior surface of the closure;

(b) a handle pivotally mounted upon the exterior plate of the housing for rotation between a retracted position and an extended position;

(c) a latch plunger operably connected with the handle, and configured such that when the handle is in the retracted position, the latch plunger is in a latched position, wherein the closure cannot be unintentionally shifted from the closed position, and when the
handle is in the extended position, the latch plunger is in an unlatched position, wherein the closure is free to be moved from the closed position to the open position;

(d) a key lock mounted on the exterior plate of the housing, where the key lock has a locked and an unlocked position;

(e) a lock cam rotatably mounted in the housing and operably connected with the key lock for rotation therewith, the lock cam having a crank arm;

(f) a first link operably connected with the crank arm;

(g) a deadbolt lock movably mounted in the housing for shifting between a locked position, wherein the closure is positively retained in the closed position, and an unlocked position, wherein the closure is free to be shifted between the open and closed positions;

(h) the deadbolt lock being operably connected with the first link;

(i) a motor operatively connected with the first link; and

(j) a computer input device comprising a plurality of differently marked areas mounted on an exterior portion of the housing being operatively connected with the motor operatively coupled with a controller, whereby entry of a preselected code actuates the motor and contemporaneously shifts the deadbolt lock between the locked and unlocked positions.

36. The Accused Locks do not infringe claim 1 of the '919 Patent, or claim 14 of the '767 Patent, or the claims that depend from them, because the Accused Locks do not have all the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Accused Locks include, but are not limited to, at least one of the following:

| [1.e] and [14.e] | The Accused Locks do not include "a lock cam rotatably mounted in the housing and operably connected with the key lock for rotation therewith, the lock cam having a lock cam crank arm" or "a lock cam rotatably mounted in the housing and operably connected with the key lock for rotation therewith, the lock cam having a crank arm." |
|---|---|
| [1.f] and [14.f] | The Accused Locks do not include "a first link operably connected with the lock cam crank arm." |
| [1.h] and [14.h] | The Accused Locks do not include the limitation that teaches "the deadbolt lock being operably connected with the first link." |
| [1.i] and [14.i] | The Accused Locks do not include "a motor having a locked and unlocked position operatively connected with the first link" or "a motor operatively connected with the first link." |

37. The '919 Patent describes, in painstaking detail, a mechanism comprising multiple, separately identified components, namely: a "deadbolt lock," a "first link," and a

"second link". The patentee went so far as to label this specific combination of elements as "critical" and "important" to the invention's function.

> **It is critical** to maintain the motor crank arm 76 in position to prevent a false indication given from the switch 105, as discussed below. In other words, **it is vital** to keep the motor crank arm 76 rotating about a fixed axis. The axis of rotation of the motor crank arm 76 is fixed by a combination of pocket 92, discussed above, as well as a circular pad 93 on the motor 30 crank arm 76 and orifice 94 in the interior backing plate 120 that holds the motor 86 in place. These features prevent the motor crank arm 76 from moving, and yet allow the motor crank arm 76 to freely rotate. **Preferably**, the interior surface of the exterior plate 22 includes physical stops 96, 97 to prevent the motor crank arm from over rotation and to prevent the deadbolt 80 from being forced to the unlocked position. As for the lock cam 74, stop or collar 79 is sized to extend into recess 124 axially positioned on the back plate 120, so as to prevent the axis of lock cam 74 from moving vertically or 40 horizontally and in rotation only.
>
> **Also, importantly**, the first link 83 and second link 87 are preferably in end-to-end relationship with one another when in the locked position, as shown in FIG.10, to positively place the motor crank arm 76 in a locked position (past parallel with deadbolt 80) such that the deadbolt 80 cannot be externally pushed back into handle assembly 1 without rotation via actuation by the motor 86, deadbolt lock 10, or interior lock knob 52.

'919 Patent, Col. 9:25-49 (emphasis added).

38. Having received its patents by describing a specific, multi-part linkage that it lauded as "critical" and "important," RVLock now seeks to abandon that disclosure to capture fundamentally different products, including the Accused Locks.

39. Indeed, RVLock's aggressive assertion of its patents on Amazon has spurred at least two other litigations pending before this Court, namely: *Shenzhen Mengdan Technology Co., Ltd v. RVLock & Co., LLC*, Case No. 1:24-cv-00062-HCN-DBP, and *Kohree LLC, et al. v. RVLock & Co., LLC*, Case No. 1:25-cv-00067-RJS-CMR.

40. The Accused Locks do not infringe, literally or under the doctrine of equivalents, any valid claim of the '919 Patent or the '767 Patent.

41. There is an actual, substantial, immediate, and justiciable controversy between Plaintiffs and RVLock regarding whether the Accused Locks or Plaintiffs infringed any claim of

the '919 Patent or the '767 Patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '919 Patent and the '767 Patent.

42. Plaintiffs are entitled to a declaratory judgment that neither Plaintiffs nor the Accused Locks infringed, literally or under the doctrine of equivalents, any claim of the '919 Patent or the '767 Patent.

**SECOND CAUSE OF ACTION
(DECLARATORY JUDGMENT OF INVALIDITY OF
US. PATENT NOS. 9,085,919 AND 9,940,767)**

43. Plaintiffs repeat and incorporate by reference the allegations of the foregoing paragraphs as if fully set forth herein.

44. The '919 Patent and the '767 Patent are invalid for failure to meet the conditions of patentability or otherwise comply with one or more of 35 U.S.C. §§ 101 (e.g., unpatentable subject matter or double patenting), 102 (e.g., lack of novelty), 103 (e.g., obviousness), and/or 112 (e.g., lack of enablement, lack of written description, indefiniteness, or failure to disclose best mode).

45. For example, the '919 Patent and the '767 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102, 103 because the prior art discloses and/or renders obvious to one of ordinary skill in the art the limitations of the claims of the '919 Patent and the '767 Patent.

46. The '919 Patent and the '767 Patent are also invalid under 35 U.S.C. § 112 for lacking enablement, lacking written description, being indefinite, and failing to disclose the best mode, at least as RVLock is asserting those claims.

47. Plaintiffs are entitled to a declaratory judgment that the '919 Patent and the '767 Patent are invalid.

## THIRD CAUSE OF ACTION
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS)

48. Plaintiffs repeat and incorporate by reference the allegations of the foregoing paragraphs as if fully set forth herein.

49. Plaintiffs had and have valuable existing and potential economic relationships with customers on Amazon.

50. As competitors, RVLock knew Plaintiffs had valuable economic relationships with its customers through their Amazon storefronts, and RVLock intentionally made baseless and improper complaints of patent infringement to Amazon to interfere with Plaintiffs' economic relationships and profit from removing its competitors' products.

51. RVLock knew, or should have reasonably known, their Amazon complaints were objectively baseless because of the significant differences between the cam-and-linkage mechanism disclosed in RVLock's patents and the dual-gear drive configuration used in the Accused Locks. These differences include, at a minimum, those described in the above paragraphs. RVLock asserted these objectively baseless claims for the improper purpose of preventing lawful competition.

52. Additionally, rather than assert infringement directly against the Accused Locks and follow Amazon's standard APEX procedure, which would have allowed Plaintiff an opportunity to defend against RVLock's allegations of infringement.

53. On information and belief, to accomplish this improper removal, RVLock misled or misrepresented to Amazon that Plaintiffs were selling locks similar to the unrelated product for which RVLock had already obtained a favorable APEX result in a separate proceeding.

54. Upon information and belief, the Accused Locks are not, in fact, similar to this unrelated product, which has not been disclosed to Plaintiffs by either RVLock or Amazon.

55. RVLock's claims submitted to Amazon that the Accused Locks infringe either the '919 Patent or the '767 Patent were false and harmful to Plaintiffs' reputation with Amazon and others. RVLock incorrectly accused Plaintiffs of committing the tort of patent infringement even though RVLock knew or should have known that these allegations were untrue.

56. By submitting baseless complaints of patent infringement to Amazon for the anti-competitive purpose of removing products not within the scope of RVLock's patent rights, RVLock also sought to extend RVLock's rights beyond the lawful scope of its patents, thereby committing patent misuse. Rather than alleging patent infringement in a federal court proceeding, RVLock misused its patents by asserting infringement to Amazon without basis and in a manner exceeding the scope that RVLock's patents lawfully protect.

57. Accordingly, RVLock used improper means to interfere with Plaintiffs' economic relationships by, at a minimum, (1) submitting bad-faith complaints of patent infringement to Amazon that were objectively baseless and for the improper purpose of preventing lawful competition; (2) misusing and abusing Amazon's procedures to remove the Accused Locks from Amazon;; (3) misleading or misrepresenting to Amazon that the Accused Locks are infringing; and (4) defaming Plaintiffs to Amazon by incorrectly accusing Plaintiffs of committing the tort of patent infringement even though RVLock knew or should have known that these allegations were untrue; (5) committing patent misuse by submitting baseless complaints of patent infringement to Amazon for the anti-competitive purpose of removing products not within the scope of RVLock's patent rights.

58. RVLock's improper interference has damaged Plaintiffs by depriving them of the sales of products during the time period Plaintiffs' products were delisted.

59. Additionally, the delisting of Plaintiffs' products resulted in a loss of sales, market share, product reviews, and product ratings, which are all crucial metrics in ranking Plaintiffs' performance on the Amazon platform and affect Plaintiffs' reputation in the marketplace. Because of the damage to Plaintiff's rankings and reputation, Plaintiff would continue to lose sales even after its product listings are restored.

60. In addition to compensatory damages, Plaintiffs are also entitled to punitive damages for RVLock's intentional, willful, reckless, and/or malicious interference.

## RESERVATION OF RIGHTS

61. Plaintiffs hereby reserve their rights to supplement with additional claims or defenses as discovery proceeds in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for entry of judgment in their favor and against RVLock as follows:

A. For judgment that neither the Plaintiffs nor the Accused Locks infringed, literally or under the doctrine of equivalents, any claim of the '919 Patent or the '767 Patent;

B. For judgment that the '919 Patent and the '767 Patent are invalid and/or unenforceable;

C. For a finding that this case is exceptional under 35 U.S.C. § 285;

D. For costs and reasonable attorneys' fees incurred in connection with this and related actions to be paid by RVLock;

E. For awards of compensatory and punitive damages against RVLock for its baseless and improper complaints to Amazon;

F. An award of any and all equitable relief to which Plaintiffs may be entitled,

including a permanent injunction, enjoining RVLock from making further allegations to Amazon of infringement by Plaintiffs of the '919 Patent and '767 Patent; and

  G. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: February 13, 2026

          PCFB, LLC

          /s/ Jared L. Chery
          Jared L. Cherry
          Attorney for Plaintiff